WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aleksandr Kocharov,<br><br>                Plaintiff,<br><br>v.<br><br>JPMorgan Chase Bank, N.A.,<br><br>                Defendant. | No. CV-21-02220-PHX-DGC<br><br>**ORDER** |

Plaintiff Aleksandr Kocharov claims that Defendant JPMorgan Chase Bank failed to protect his checking account from fraud, leading to serious difficulties for him and his family. Doc. 21 ¶¶ 6-16. The parties have filed motions for summary judgment on Plaintiff's remaining breach of contract claim. Docs. 48, 49. The motions are fully briefed and the Court heard oral argument on October 20, 2023. *See* Docs. 50-58. For reasons stated below, the Court will grant summary judgment in favor of Defendant.

**I.    Background.**

    **A.    Undisputed Facts.**

The following facts are not genuinely disputed for purposes of summary judgment. Plaintiff opened a personal checking account with Defendant in 2010 (account number ending in x6140). Docs. 50, 53 ¶¶ 1, 3. Plaintiff agreed to be bound by the terms and conditions of Defendant's account rules and regulations or other applicable account agreement. *Id.* ¶¶ 2, 4. The agreement in effect during the times relevant to this case was

the Deposit Account Agreement dated November 11, 2018 (the "DAA"). *Id.* ¶¶ 5-6; *see* Doc. 50-1 at 45-68.[1]

In late 2018, Plaintiff applied online for a personal loan from CashNetUSA. Docs. 48 at 3; 48-2 at 2-8; 50, 53 ¶ 8. He did so because he was behind on several bills, including being 60 days behind on his second mortgage. Docs. 50-1 at 20, 53 at 2. Plaintiff believed the individuals he communicated with regarding the loan were part of a legitimate online lender, but later learned that they were perpetrating a scam to steal his money. Docs. 50, 53 ¶ 11; 50-1 at 19-21.[2] Through the loan application process, Plaintiff provided the purported lender with his name, address, date of birth, social security number, and checking account number. Docs. 50, 53 ¶ 10; 50-1 at 17. To effectuate the loan, Plaintiff also sent the purported lender various amounts of money. Docs. 50, 53 ¶ 13. During the three-day period of January 15-17, 2019, Plaintiff authorized payments from his checking account in the amounts of $1,140, $1,996, and $2,066. Docs. 50, 53 ¶ 14; 50-1 at 20, 85-87, 95. Plaintiff sent the money to the purported lender via MoneyGram transfers he made at Walmart using the debit card linked to his checking account. *See id.* In total, Plaintiff sent $5,202. Docs. 50, 53 ¶ 14; 50-1 at 21-22. Plaintiff ultimately withdrew from the loan when the purported lender asked for more money. Docs. 48 at 3, 50-1 at 18.

During the same three-day period, an unauthorized third-party called Defendant's telephone banking center and gained access to Plaintiff's checking account by correctly answering verification questions. Docs. 50, 53 ¶ 15.[3] Among other steps, it appears the

---

[1] The DAA makes clear that it is the basic agreement between Plaintiff and Defendant and is the contract that governs Plaintiff's checking account. Doc. 50-1 at 47.

[2] The real CashNetUSA is part of Enova International, Inc., a publicly traded company (NYSE:ENVA). *See* https://www.cashnetusa.com/about-us.html; https://www.enova.com/brands/ (last visited Oct. 23, 2023). The fraudulent entity at work in this case will be referred to as "the purported lender."

[3] Plaintiff disputes that the third-party gained access to the account using the personal information he provided the purported lender, and further asserts that he never provided his online login and password information for the account. Docs. 48 at 4, 53 ¶¶ 15-16. Defendant does not contend that Plaintiff provided his login and password information to the third-party. Doc. 51 at 4 n.4.

third-party activated Defendant's voice-recognition system for Plaintiff's account, presumably to facilitate easier access. Doc. 53 at 18. The third-party reversed several transactions Plaintiff previously had authorized to make payments to various entities, including a payment on his delinquent second mortgage. Doc. 50-1 at 94-95. Specifically, the third-party reversed the following transactions:

- $300.00 ATM withdrawal Plaintiff made on December 17, 2018.

- $1,117.00 second mortgage payment Plaintiff made on January 2, 2019.

- $149.00 payment to Capital One Plaintiff made on January 14, 2019.

- $1,140.00 MoneyGram transaction Plaintiff made on January 15, 2019.

- $418.00 payment to Capital One Plaintiff made on January 15, 2019.

- $284.99 payment to City Services Plaintiff made on January 16, 2019.

- $1,800 of the MoneyGram transaction Plaintiff made on January 16, 2019.

*Id.*; Doc. 50-1 at 94-95, 121.[4]

With each reversal, Defendant sent Plaintiff a letter explaining that a temporary credit in the amount of the transaction had been made to his checking account while Defendant investigated the reversal. Docs. 50, 53 ¶¶ 17-23; 50-1 at 99-127. The reversals resulted in Defendant making temporary credits to Plaintiff's account totaling $5,208.99. Docs. 50, 53 ¶ 24. The temporary credits helped fund the $5,202 that Plaintiff sent to the purported lender between January 15 and 17, 2019. Doc. 50-1 at 94-95.[5]

---

[4] Plaintiff objects to Defendant's characterization of the reversals as "attempted" transactions. Doc. 53 at 4. Plaintiff claims that Defendant is trying to show that he authorized the fraudulent reversals and thereby engaged in criminal activity. *Id.* But Defendant makes no such accusation (*see* Doc. 51 at 2 n.2), and refers to the reversals as "attempted" because some of them were cancelled when Plaintiff alerted Defendant to the fraud.

[5] Following its investigation, Defendant determined that the third-party reversals had "inflated the account and then [Plaintiff] went to [W]almart and made purchases at the advice of" the purported lender. Doc. 53 at 11. Defendant concluded that it could not

3

Defendant called Plaintiff to inquire about the reversals shortly after they were made, stating that he did not authorize them. Docs. 50, 53 ¶ 25; 50-1 at 14-16. Some of the reversals were then cancelled and Defendant removed $3,524.99 of the temporary credits from Plaintiff's account, effective January 29, 2019. Docs. 50, 53 ¶¶ 26-27; 50-1 at 16, 129-47 (the $3,524.99 included the $1,140 and $1,800 credits for the MoneyGram transactions). Plaintiff closed his account on or about January 18, 2019, on the advice of Defendant. Doc. 54 at 14-16. Because the account was closed at the time the temporary credits were to be removed on January 29, 2019, the resulting $3,524.99 negative balance was charged off and sent to a collection agency. Docs. 50, 53 ¶ 29; 50-1 at 90.[6]

## B.   Procedural History.

Proceeding pro se, Plaintiff sued Defendant in December 2021. Doc. 1. The Court granted Defendant's motion for a more definite statement because Plaintiff's complaint failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a). Docs. 14, 20.

In August 2022, Plaintiff filed an amended complaint that asserted breach of contract and negligence claims. Doc. 21. Plaintiff alleged that Defendant had an obligation to protect his account from fraudulent transactions and, despite this obligation, failed to prevent the unauthorized third-party from accessing his account and later refused to reimburse Plaintiff for his loss. *Id.* ¶¶ 7, 32-33. As a result, Plaintiff alleged, he became delinquent on his bills, was forced into bankruptcy, lost his home to foreclosure by the second mortgage holder, and sustained injuries to his health. *Id.* ¶¶ 17-23, 34, 41. Plaintiff seeks $12,370 for money allegedly lost from his checking account, $280,000 in medical costs, and unspecified damages for the loss of his home. *Id.* at 5.

---

recover the funds paid through Walmart because Walmart provided "goods/services as [Plaintiff] intended" – namely, the MoneyGrams Plaintiff purchased from Walmart to send to the purported lender. *Id.*

[6] Defendant states that it permanently credited $1,684 to Plaintiff's account on February 27-28, 2019 (the temporary credits of $1,117, $149, and $418), but does not explain how the $1,684 could have been credited to a closed account. Docs. 49 at 6; 50 ¶¶ 31-32; 50-1 at 152-59; *see also* Doc. 53 ¶ 31.

4

Defendant moved to dismiss the amended complaint for failure to state a claim. Doc. 22. The Court dismissed Plaintiff's negligence claim as time-barred under Arizona's two-year statute of limitations because Plaintiff discovered Defendant's alleged negligence and his injuries as early as April 27, 2019, the date Plaintiff received the notice of trustee sale for his home. Doc. 28 at 7-9 (citing Doc. 22 ¶¶ 18, 39-40; A.R.S. § 12-542(1)). The Court found that dismissal of Plaintiff's breach of contract claim was not warranted because the claim was not time-barred on its face and Plaintiff alleged sufficient facts to support the claim. *Id.* at 3-5, 9-10. The parties now cross-move for summary judgment on the breach of contract claim. Docs. 48, 49.

In granting summary judgment for Defendant, the Court wishes to emphasize two important points. First, Plaintiff and his family clearly have suffered a severe trial, losing their home of many years, sustaining substantial financial losses, and experiencing serious health problems. The Court extends its sympathy to Plaintiff and his family. Second, Plaintiff expresses concern that Defendant has accused him of being involved in the wrongful activity that affected his account. Defendant has clarified, however, that it makes no such accusation, and the Court sees nothing in this case to suggest that Plaintiff was involved in any form of wrongdoing or is anything other than an innocent victim of fraud by the purported lender. Notwithstanding the Court's sympathy for Defendant's difficulties, it must apply the relevant law in a neutral manner.

**II.   Legal Standards.**

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and draw justifiable inferences in that party's favor, *Anderson*, 477 U.S. at 255.

Under Arizona law, the interpretation of a contract is a question of law for the court to decide. *See Univ. Mech. Contractors of Ariz., Inc. v. Puritan Ins. Co.*, 723 P.2d 648, 650 (Ariz. 1986); *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000). The provisions and undefined terms of the contract must be construed according to their plain, ordinary, and everyday sense. *See Keggi*, 13 P.3d at 788 (citing *Sparks v. Republic Nat. Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982)); *Ariz. Prop. & Cas. Ins. Guar. Fund v. Dailey*, 751 P.2d 573, 575 (Ariz. Ct. App. 1987). An ambiguity exists only when the language of the contract is unclear and reasonably can be construed in more than one sense. *See Roberts v. State Farm Fire & Cas. Co.*, 705 P.2d 1335, 1337 (1985) (citing *Sparks*, 647 P.2d at 1132).[7]

## III.  Plaintiff's Motion.

Plaintiff moves for summary judgment on the ground that Defendant failed to protect his account from a third-party scam. He asserts that "criminals robbed [his] bank account with absolutely no protection and prevention from [Defendant]" and that Defendant "clearly showed incompetence to prevent and protect [his] bank account from criminal fraud." Doc. 48 at 3. These assertions are not sufficient to warrant summary judgment in favor of Plaintiff on his breach of contract claim.

To establish breach of contract, Plaintiff must prove by a preponderance of the evidence: (1) an agreement between Plaintiff and Defendant, (2) Defendant's breach of

---

[7] The DAA provides that any dispute relating to Plaintiff's account is governed by the law of the state where the account is located and any applicable federal law. Doc. 50-1 at 57. Arizona law applies here because Plaintiff applied for the account in Arizona (*see id.*) and federal contract law is determined by reference to "traditional common law principles" and the "content of the forum state's law." *Glenn-Colusa Irrigation Dist. v. U.S. Army Corps of Eng'rs*, No. CV 2:17-0120-WBS-GGH, 2017 WL 2779012, at *3 (E.D. Cal. June 27, 2017).

an obligation imposed by that agreement, and (3) resulting damage to Plaintiff. *See Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975); *MD Helicopters Inc. v. Boeing Co.*, No. CV-17-02598-PHX-JAT, 2019 WL 3840974, at *7 (D. Ariz. Aug. 15, 2019). Nowhere in his motion does Plaintiff identify a contractual obligation on the part of Defendant to prevent fraud or refund stolen money. *See* Doc. 48; *Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 585 (9th Cir. 2021) (finding that the plaintiff's breach of contract claim failed as a matter of law because she "does not cite any specific provision of the [agreement] that Chase allegedly violated").

Plaintiff asserts that the transaction reversals secured by third parties were clearly unauthorized because electronic funds transfers were not available for his account under the DAA. Defendant therefore "violated [its] own policy and allowed criminals to perform reversals from his account[.]" Doc. 48 at 6 (citing Doc. 48-3 at 43). But the agreement cited by Plaintiff did not become effective until October 2022 – more than three years after the reversals – and applies only to "Chase First Checking accounts" for children ages 6-17. *See* Docs. 48-3 at 43, 51 at 10; *see also* Doc. 54 at 2 (Plaintiff acknowledging that he "accidentally provided the Policy for kids less than 18 years old").

In his reply, Plaintiff references the Telephone Banking provision of the applicable DAA and asserts that the personal information he provided to the purported lender should not have been used to effectuate the reversals because a valid password or PIN was required. Doc. 54 at 3, 9. But that is not what the contract says. The Telephone Banking provision states that "[y]ou may use our automated customer service system *or* speak to a telephone banker to get your account information, transfer funds between your accounts with us, or pay qualifying Chase loans or credit cards." Docs. 50-1 at 61, 54 at 9 (emphasis added). The contract requires use of a password or PIN only for the automated system: "You must have a valid deposit or loan account *and a valid password or PIN to use the automated system*." *Id.* (emphasis added). Plaintiff presents no evidence that the third-party made the reversals using the automated system instead of speaking with a telephone banker. *See* Doc. 56 at 5-6.

Because Plaintiff has not established that Defendant breached an obligation imposed by the DAA, the Court will deny his motion for summary judgment.[8]

**IV.     Defendant's Motion.**

Defendant argues that summary judgment is warranted because: (1) Defendant had no obligation under the DAA to prevent the $5,202 in MoneyGram transfers Plaintiff made to the purported lender, or to prevent the reversals by third-party fraudsters with whom Plaintiff shared his personal information; (2) the consequential damages Plaintiff seeks are barred by the express terms of the DAA and Plaintiff has not shown that Defendant was the proximate cause of his alleged injuries; and (3) Plaintiff's contract claim is untimely under the DAA's two-year limitations period.  Doc. 49 at 1-2, 9-16.

**A.     Defendant Did Not Breach the DAA.**

Plaintiff alleges that Defendant has "various fraud, theft, and error protections in place to protect account owners (including Plaintiff's account) from fraudulent or erroneous transactions."  Doc. 21 ¶ 7.  But nothing in the DAA obligated Defendant to prevent Plaintiff from falling victim to a scam loan offer from a different entity and transferring $5,202 from his account to the purported lender.

The DAA provides that Defendant "may" prevent or decline a transaction if it suspects fraud.  Doc. 50-1 at 56.  But this language does not obligate Defendant to ferret out and prevent fraud.  Plaintiff identifies no provision of the DAA that imposes such a contractual duty, and the Court has found none.

What is more, because Plaintiff himself authorized and sent the MoneyGram transfers to the purported lender, Defendant had no reason to suspect that the transfers were fraudulent.  It is undisputed that Defendant had no knowledge of Plaintiff's loan

---

[8] In an impermissible sur-reply (*see* LRCiv 7.2), Plaintiff asserts that Defendant cannot explain how certain transactions were made in his account, and notes that various questions are stated in Defendant's investigation report.  Doc. 57 at 3.  Plaintiff attaches several pages of the report to his statement of facts (Doc. 53 at 9-24), but does not address them further.  Instead, he merely requests that Defendant provide detailed answers to questions raised in the report.  Doc. 53 at 3.  This is not the proper role of a motion for summary judgment.

8

application (Doc. 50 ¶ 12), and Plaintiff presents no reason Defendant should have suspected fraud when Plaintiff sent the money. Indeed, the DAA provides that "[w]e will not be liable for anything we do when following your instructions." Doc. 50-1 at 57. Defendant did not breach the DAA by failing to prevent transactions Plaintiff authorized. *See Roundtree v. Chase Bank USA, N.A.*, No. C13-239 MJP, 2014 WL 794800, at *8 (W.D. Wash. Feb. 27, 2014) (granting summary judgment where the plaintiff alleged that "Chase breached its contractual duties when it failed to protect him from fraudulent charges" but "[n]othing in the Cardmember Agreement states Chase has such duty").[9]

Nor did Defendant breach the DAA in its handling of the transactions reversed by the third-party. That individual called Defendant's telephone banking center, claimed to be Plaintiff, and accessed his account by correctly answering verification questions using Plaintiff's personal information. Docs. 50 ¶¶ 15-16; 50-1 at 90; 53 at 16. The information included Plaintiff's social security number, date of birth, and account number, all provided by Plaintiff to the purported lender. *Id.*

Nothing in the DAA required Defendant to prevent the reversals given the apparent authorization by Plaintiff. *See* Doc. 53 at 11 (explaining that Plaintiff "provided all the [necessary] information the fraudster needed to gain access to the account"). And Defendant's handling of the reversals and their subsequent cancellation by Plaintiff was consistent with the terms of the DAA. Regarding potential erroneous transactions, the DAA states:

> We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. However, if we need more time, we may take up to 45 days to investigate your complaint or question. If we do this, we will credit your balance within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

---

[9] The DAA provides that Plaintiff is not liable for unauthorized transactions, including electronic funds transfers that he did not make (Doc. 50-1 at 63-64), but these provisions do not apply when Plaintiff clearly authorized the MoneyGram transfers. *See* Doc. 53 ¶ 14 ("In total[,] I sent $5,202.00 to Cash Net USA.").

Doc. 50-1 at 62. Consistent with this provision, Defendant made temporary credits to Plaintiff's account in the amount of the reversed transactions, and then removed some of the credits when Plaintiff informed Defendant that he had not authorized the reversals. Docs. 50, 53 ¶¶ 17-27; 50-1 at 90-147. There can be no breach of contract when Defendant simply acted in accordance with the express terms of the DAA and Plaintiff's instructions. *See* Doc. 49 at 11; 50-1 at 16 (Plaintiff admitting that Defendant acted within its policy in placing and removing the temporary credits); *Roundtree*, 2014 WL 794800, at *8 (holding that the plaintiff's breach of contract claim failed as a matter of law where the agreement imposed no duty on the defendant to protect against fraud and contained a "[s]ection discussing what to do if a mistake is made on the statement; thus, the agreement suggests fraudulent charges may be posted on one's account").

Plaintiff further alleges that "if an account has money removed from it because of error or fraud, Defendant's policy is to replace/refund the money lost." Doc. 21 ¶ 7. But even if this is true, the DAA does not promise a refund where no error or fraud is found. *See* Docs. 49 at 11, 50-1 at 62. Each of the transactions reversed at the request of an unidentified third party using Plaintiff's personal information – such as the payment to Plaintiff's second mortgage holder – had in fact been made by Plaintiff. Reversals that were left in place after Defendant's investigation had the effect of returning the amount of the payments to Plaintiff's account. That Plaintiff chose to use some of those funds to pay the purported lender was not a breach by Defendant. Defendant had no obligation under the DAA to prevent Plaintiff from being defrauded in a loan application to a separate entity. *See* Doc. 53 at 11 (explaining that Plaintiff "participated in a loan scam" and there are no "recovery rights for scams" under the DAA). And the few reversals that ultimately were undone by Defendant had the effect of restoring Plaintiff's original transactions – the money went to the original sources to which Plaintiff paid it. Defendant acted consistent with the terms of the DAA in removing the credits after Plaintiff cancelled the reversals. Doc. 50 ¶ 30, 50-1 at 16.

Because the clear and unambiguous terms of the DAA impose no obligation on Defendant to prevent the fraud at issue here or to refund money lost due to such fraud, Plaintiff's breach of contract claim fails as a matter of law. *See Roundtree*, 2014 WL 794800, at *8; *DriverDo LLC v. JP Morgan Chase Bank*, *N.A.*, No. 20 C 5046, 2022 WL 3645909, at *5 (N.D. Ill. Aug. 24, 2022) ("Chase is entitled to summary judgment on the breach of contract claim because it is undisputed that the DAA governs and there was no breach."); *Giovinale v. JP Morgan Chase Bank, N.A.*, No. CV H-16-986, 2017 WL 3535440, at *4 (S.D. Tex. Aug. 17, 2017) (granting summary judgment where the plaintiff "failed to raise a dispute of material fact that Chase breached its obligations under the DAA"); *Denson v. JPMorgan Chase Bank, N.A.*, No. 01-19-00107-CV, 2020 WL 7062452, at *6 (Tex. App. Dec. 3, 2020) (affirming summary judgment where the plaintiff presented "no evidence that [Chase] breached any provision of the DAA").

### B.   Consequential Damages.

Plaintiff claims that as a consequence of Defendant's alleged failure to prevent fraud and refund his lost money he became delinquent on his bills, was forced into bankruptcy, lost his home to foreclosure, and sustained injuries to his health. Doc. 21 ¶¶ 17-31, 34. Defendant argues that these alleged damages are precluded as a matter of law under the express terms of the DAA. Doc. 49 at 15. The Court agrees.

The DAA contains the following Damages Limitation Clause:

> **WE WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**

Doc. 50-1 at 57 (emphasis in original). This express limitation of liability, if enforceable under Arizona law, precludes the consequential damages Plaintiff seeks. *See Castro v. JPMorgan Chase Bank, N.A.*, No. 2:20-CV-10634-SB-JEM, 2021 WL 3468108, at *2 (C.D. Cal. Apr. 14, 2021) (finding that the plaintiff was "precluded from pursuing consequential damages" under the same DAA clause); *Blackford v. JPMorgan Chase*

*Bank, N.A.*, No. 1:14-cv-01717-JMS-DKL, 2015 WL 7017204, at *7 ("[E]ven if Mr. Blackford were correct that at some point Chase breached the [DAA], the Damages Limitation Clause would still operate to preclude consequential damages."); *Sidi Spaces LLC v. Aluminum Trailer Co.*, No. CV-19-01476-PHX-SRB, 2020 WL 6799262, at *16 (D. Ariz. Oct. 22, 2020) ("If the limitation-of-liability clause is enforceable, it clearly bars any recovery of consequential damages.").

Under Arizona law, "the general rule [is] that a person is bound by the provisions of the contract he signs, even those terms that are not bargained for or even read at the time of contracting." *Flores v. ADT Sec. Servs., Inc.*, No. CIV 10-036 TUC FRZ, 2011 WL 1211769, at *6 (D. Ariz. Jan. 31, 2011) (citing *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 398-99 (Ariz. 1984)). A contract clause may limit or exclude consequential damages "unless the limitation or exclusion is unconscionable." A.R.S. § 47-2719(C). The determination of unconscionability is to be made by the Court as a matter of law. A.R.S. § 47-2302(A); *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 56 (Ariz. 1995). Plaintiff does not claim, and it does not otherwise appear to the Court, that the Damages Limitation Clause is unconscionable.[10]

Arizona recognizes two types of unconscionability: "procedural, which arises in the bargaining process at the time of contract formation, and substantive, where the contract terms are per se unconscionable." *Id.* At bottom, "[t]he purpose of the unconscionability doctrine is 'the prevention of oppression and unfair surprise not of disturbance of allocation of risks because of superior bargaining power.'" *Barnett v. V.T. Motors LLC*, No. CV-21-01195-PHX-SPL, 2021 WL 5759113, at *3 (D. Ariz. Dec. 3, 2021) (quoting *Maxwell*, 907 P.2d at 57).

Procedural unconscionability "is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not

---

[10] The Court accordingly need not consider extrinsic evidence regarding the commercial setting or the purpose and effect of the Damages Limitation Clause. *See* A.R.S. § 47-2302(B).

proceed as it should." *Id.* (cleaned up); *see also Maxwell*, 907 P.2d at 58 (noting that "procedural unconscionability bears a strong resemblance to its 'common-law cousins' of fraud and duress"). "[T]he fundamental question is whether one party to a contract has unfairly or surreptitiously deprived the other of the right of access to the courts." *Barnett*, 2021 WL 5759113, at *3 (quoting *Dueñas v. Life Care Ctrs. of Am., Inc.*, 336 P.3d 763, 768 (Ariz. Ct. App. 2014)). The Court finds no procedural unconscionability in this case because the Damages Limitation Clause is featured prominently in the DAA and is set forth in "bold-faced capital letters . . . using easily understood language." *Serengeti Express, LLC v. JP Morgan Chase Bank, N.A.*, No. 19-CV-5487 (PKC), 2020 WL 2216661, at *4 (S.D.N.Y. May 7, 2020); *see also East v. PNC Bank Nat'l Ass'n*, No. CV-22-00553-PHX-ESW, 2022 WL 1619085, at *4 (D. Ariz. May 23, 2022) ("To the extent Plaintiff claims procedural unconscionability, the claim is without merit. As mentioned, the Agreement contains bold language directing the reader's attention to the arbitration provision. The arbitration provision is written in plain English that would be comprehensible to a non-lawyer.").

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell*, 907 P.2d at 58. Contract clauses may be substantively unconscionable "if they are 'monstrously harsh' or 'shocking to the conscience.'" *Aerial Funding LLC v. Van Sickle*, No. 1 CA-CV 19-0543, 2020 WL 6140700, at *3 (Ariz. Ct. App. Oct. 20, 2020) (citations omitted). Nothing about the Damages Limitation Clause shocks the conscience or is monstrously harsh, particularly given that Plaintiff alleges breach of contract and has not shown that Defendant acted in bad faith or was grossly negligent. *See Sidi Spaces*, 2020 WL 6799262, at *16 ("In Arizona, a limitation-of-liability clause may not be enforced by a party found to have acted in bad faith. . . . [T]he Arizona Court of Appeals noted that this policy choice is consistent with the UCC's provision allowing for limitation clauses so long as they are not unconscionable.") (citing *Airfreight Exp. Ltd. v. Evergreen Air Center, Inc.*, 158 P.3d 232, 239-40 (Ariz. Ct. App. 2007)); *Serengeti Express*, 2020 WL

2216661, at *4-5 ("The conduct alleged in the Complaint does not rise to level of 'intentional wrongdoing' or 'a reckless indifference to the rights of others' sufficient to render the explicit terms of the [DAA] unenforceable."); *Ma v. U.S. Bank, Nat'l Ass'n*, 2023 IL App (1st) 221556-U, ¶ 39 (Ill. Ct. App. Sept. 26, 2023) ("[Ma] fails to overcome the liability limitation that she accepted when she opened the checking account at U.S. Bank. There is no indication in the record that when Ma opened the account and signed the bank's deposit account agreement, the parties were contemplating that the bank would bear any expenses that Ma subsequently experienced if the bank erred. In fact, by executing the agreement, Ma expressly agreed 'to waive any indirect, incidental, special, consequential and punitive damages for errors or mistakes U.S. Bank makes in good faith.'") (cleaned up).

The Court concludes that the Damages Limitation Clause is enforceable and summary judgment is warranted with respect to consequential damages.[11]

### C. Limitations Period.

Under Arizona law, the statutory limitations period for breach of contract claims is six years. *See* A.R.S. § 12-548; *Nangle v. Farmers Ins. Co. of Ariz.*, 73 P.3d 1252, 1254 (Ariz. Ct. App. 2003). The DAA shortens this period to two years if permitted by state law:

> You must file any lawsuit or arbitration against us within two years after the cause of action arises, unless federal or state law or an applicable agreement provides for a shorter time. . . . If applicable state law does not permit contractual shortening of the time during which a lawsuit must be

---

[11] Even if consequential damages were not barred by the express terms of the DAA, the Court seriously doubts that Plaintiff could prove Defendant's action caused the loss of his home or the health problems he suffered because of that loss. *See* Doc. 49 at 16. Defendant admits that he was 60 days in arears on his second mortgage payments before the events at issue in this case occurred. When the fraudsters reversed Plaintiff's payment to the second mortgagor and Plaintiff's payments to the purported lender left him with insufficient funds to make a payment on his mortgage, the mortgagor foreclosed. Plaintiff sought to prevent the trustee's sale by declaring bankruptcy, but the bankruptcy court allowed the sale to proceed. The Court has difficulty seeing how Defendant caused this series of unfortunate events.

14

> filed to a period as short as two years, you and we agree to the shortest permitted time under that state's laws.

Doc. 50-1 at 57. Defendant contends that Arizona law permits parties to "shorten the statute of limitations by express contractual provision." Doc. 49 at 13 (quoting *PNC Bank, N.A. v. Stromenger*, No. 2 CA-CV 2015-0135, 2016 WL 4434310, at *3 (Ariz. Ct. App. Aug. 22, 2016)). Defendant further contends that Plaintiff's breach of contract claim is untimely because he discovered the claim as early as March 2019, more than two years before he brought this action in December 2021. *Id.* at 14-15.

"In some areas, Arizona law permits parties to bargain to shorten the period of the statute of limitations; for insurance contracts this right is expressly provided by statute." *Auto. Holdings, L.L.C. v. Phoenix Corners Portfolio, L.L.C.*, No. CV-09-01843-PHX-JAT-PHX, 2010 WL 1781007, at *3 (D. Ariz. May 4, 2010) (citing A.R.S. § 20-1115 (A)(3)); *see Zuckerman v. Transamerica Ins. Co.*, 650 P.2d 441, 445 (Ariz. 1982) ("The statutes of limitations are declarations of public policy as well as a private right. The clause in issue here, however, is given inherent validity by A.R.S. § 20-1115(A)(3), which permits but does not require that such a provision be inserted in certain types of insurance policies.") (cleaned up); *Burk v. State Farm Fire & Cas. Ins. Co.*, No. CV-14-02642-PHX-GMS, 2015 WL 13625691, at *3 (D. Ariz. Aug. 11, 2015) ("Under Arizona Law, insurers may contractually shorten the six-year statutory limitations period for contract actions.") (citing § 20-1115(A)(3)). Outside of the insurance context, however, courts should "question the inherent validity of a [contract] provision which sets a limitation period . . . much shorter than that enacted by the legislature." *Zuckerman*, 650 P.2d at 445. Although permitted in other states, "it is not clear that Arizona law generally permits the shortening of statute of limitations by contract when not explicitly authorized by statute." *Auto. Holdings*, 2010 WL 1781007, at *3.

The DAA's two-year limitations period "impose[s] a dramatically shorter time for filing suit than the six-year period established by the [Arizona] Legislature for actions on written contracts." *Angus Med. Co. v. Digital Equip. Corp.*, 840 P.2d 1024, 1031 (Ariz.

Ct. App. 1992). Defendant has not shown, and the Court cannot otherwise conclude, that the shorter two-year limitations period is enforceable under Arizona law. *See id.* ("[T]he [eighteen-month] limitation term 'emasculates' Angus's remedy against Digital by dramatically shortening the time period in which Angus was required to act on any contract claims. The trier of fact could reasonably find that Angus was unfairly surprised by a boilerplate term beyond its reasonable expectation, and we therefore reverse the entry of summary judgment on this issue."). The Court will deny summary judgment on Defendant's argument that the breach of contract claim is untimely. Doc. 49 at 13-15.[12] As explained above, however, the breach of contract claim otherwise fails as a matter of law as does the claim for consequential damages.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (Doc. 48) is **denied**.

2. Defendant's motion for summary judgment (Doc. 49) is **granted**.

3. The Clerk of Court shall enter judgment in favor of Defendant and terminate this action.

Dated this 25th day of October, 2023.

David G. Campbell
Senior United States District Judge

---

[12] Defendant's citation to *Swanson v. Image Bank, Inc.*, 77 P.3d 439 (Ariz. 2003), is misplaced. Doc. 49 at 13. In that case the Arizona Supreme Court merely explained that parties generally may determine the terms of their contractual engagements, particularly where they have "relatively equal bargaining power" and are "both represented by counsel[.]" 77 P.3d at 443.